J. M. MINK and Lenora Mink, his wife, Appellants,

v.

John STRATTON, Appellee.

Court of Appeals of Kentucky.

Sept. 14, 1973.

F. Preston Farmer, Hamm, Taylor, Milby & Farmer, London, for appellants.

Walter Patrick, Lawrenceburg, W. Earl Dean, Dean, Dean & Dean, Harrodsburg, for appellee.

CULLEN, Commissioner.

J. M. Mink and Lenora Mink, his wife, are appealing from a judgment for $19,649.20 which John Stratton obtained against them, on a jury verdict, as damages for malicious prosecution of Stratton on criminal charges. The Minks' primary contention is that as a matter of law there was probable cause for the placing of the criminal charges and therefore their motion for a directed verdict and subsequent motion for judgment n. o. v. should have been sustained.

Stratton's exonerations of the criminal charges (first by an examining court's dismissal of a warrant and later by a jury's verdict of not guilty on a trial under an indictment) appear to have resulted from nonacceptance of J. M. Mink's identification of Stratton as the person who committed the acts out of which the criminal charges arose. We think that the question of whether Mink had a reasonable basis for identifying Stratton as the guilty person is the controlling issue in the case.

The Minks owned and operated a motel in Lincoln County, Kentucky. On the evening of August 16, 1969, a man representing himself to be R. Murphy of 1131 Clark Street, Louisville, rented a room in the motel. He listed his automobile as having Kentucky license number 13–606. Mr. Mink, who was at the motel desk at the time, ascertained that the listed number was correct by going outside and looking at the license plate on the car.

The following morning, after "R. Murphy" had departed, Mr. Mink checked the motel room and found that a television set and a blanket were missing. Mink then undertook a course of investigation.

Mink learned through the Department of Public Safety that the license number on the "Murphy" car was registered to Jenkins Chevrolet Company in Lawrenceburg, Kentucky. He also learned through authorities in Louisville that no one named "R. Murphy" lived at 1131 Clark Street. Mink tried to reach Mr. Jenkins in Lawrenceburg, by telephone, but without success. He then went to Lawrenceburg in an effort to see Mr. Jenkins, but the latter was away from his place of business when Mink arrived. While waiting for Jenkins to return, Mink encountered Stratton, who was a used car salesman for Jenkins. Mink identified Stratton as the person who had claimed to be "Murphy." Mink did not then make any accusation, but engaged Stratton in conversation. Stratton and another salesman told Mink that the car with license number 13–606 had been sold at a used-car auction in Louisville in March of 1969, and they testified that they showed him copies of Jenkins' records containing the details of that sale. Mink did not make any investigation of that sale, but he checked the records of the county court clerk and found that there had been no change of the registration from Jenkins' name.

Subsequently Mink discussed the case with the county attorney of Lincoln County and after being assured by Mink that he was positive of his identification of Stratton, the county attorney assisted Mink in the procuring of a warrant for Stratton's arrest. (We bypass a discussion of the defense of advice of counsel because the evidence was that Mink did not tell the county attorney about the alleged sale of the car in March.)

On an examining trial the charge based on the warrant was dismissed for lack of sufficient evidence, despite Mink's testimony at that trial identifying Stratton as being the man who claimed to be "Murphy." It appears that the judge was informed by letter from Stratton's attorney that an investigation had disclosed that the car in question had been sold at a used-car auction in Louisville, on March 25, 1969, to Erwin Jenkins of Stanford; the latter had sold it on April 5 to Clement Elkins of Stanford; Elkins had sold it around the middle of April to John Watson of Jacksonville, Alabama; and the latter subsequently sold it to Lindsey Watson of Atlanta, Georgia; that the latter, however, denied ever having owned the car.

After the dismissal of the initial charge, Mink consulted an attorney in Danville, who advised him that he could seek an indictment by the grand jury of Lincoln County. (This attorney testified that Mink told him about the alleged sale of the car in March.) Mink then appeared before the grand jury, with his brother-in-law, who testified that he was at the motel the night "Murphy" checked in, and that he too identified Stratton as being "Murphy." The grand jury returned an indictment but on a trial the jury found Stratton not guilty. On that trial there was testimony verifying the sale of the car from Jenkins Motors to Erwin Jenkins and from the latter to Clem Elkins. There was no verification, however, of the alleged transfer from Elkins to John Watson of Alabama or from the latter to Lindsey Watson of Georgia.

In 43 A.L.R.2d there is an annotation, beginning at page 1048, entitled "Liability in malicious prosecution for instigation or continuation of prosecution of plaintiff mistakenly identified as person who committed an offense." That annotation, on page 1049, contains this statement, supported by citations of cases from six different states:

"In most of the cases where the defendant in the malicious prosecution action has personally identified the plaintiff as having committed a crime, the courts have found that there was a reasonable basis for the defendant's belief that the plaintiff was the guilty person and have absolved him of liability in connection with the resulting prosecution."

The annotation cites only one case in which a court found the circumstances to be such as to indicate that a reasonable investigation by the defendant might have shown the falsity of the identification.

The Later Case Service cites two additional cases, in one of which the identification was held reasonable and in the other not.

While the appellee in the instant case does not argue in terms of the unreasonableness of Mink's belief in the correction of his identification of Stratton, he points to Mink's failure to investigate the facts concerning the alleged sales of the car as the reason why Mink cannot claim that he had probable cause for the making of the criminal charges against Stratton. In effect, then, the argument is that Mink's identification was not reasonable because the information given to Mink concerning the auction sale of the car reasonably required him to make further investigation.

We are not persuaded of the validity of the argument. We think that when Mink checked the registration records of the county court clerk and found that the car still was registered to Jenkins Chevrolet, he was reasonably warranted in believing that despite the alleged sale the ownership of the car had not changed to such an extent that access to the car was no longer available to Stratton. Particularly is this true when it is considered that the statute requires the seller of a motor vehicle to cause the registration to be changed. KRS 186.190.

We attach some significance also to the fact that even had Mink made an investigation the trail would have ended with John Watson, who denied that he had ever owned the car, thus leaving no proof that Stratton could not have had possession of the car in August.

It is our opinion that the facts of this case bring it within the general line of decisions exonerating the defendant on the ground that there was a reasonable basis for the defendant's belief in the correctness of his identification of the plaintiff as the person who committed the offense.

The judgment is reversed with directions to enter judgment notwithstanding the verdict, dismissing the plaintiff's claim.

All concur.